CLEAVER et al. v. TAYLOR et al.[1]

(Circuit Court of Appeals, Fifth Circuit. January 9, 1900.)

No. 844.

SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE—LACHES.

Complainants purchased certain lands, and received conveyances therefor, from commissioners appointed in a partition suit between the heirs of the deceased owner, and went into possession and made improvements thereon. Some 12 years later an action was brought against them by the heirs to recover the lands, pending which they made an agreement with the attorney and agent to purchase the lands from such heirs, and in consequence of such agreement a judgment was rendered for the plaintiffs in the action without contest. Complainants made a partial payment, which was accepted; but the conveyance made, which was not executed by the heirs themselves, did not give them a title upon which they could negotiate a loan, by which means it was understood that they were to procure

[1] Rehearing denied February 13, 1900.

the money to complete the payment. No better title was offered, and no further payment was made; but complainants continued in possession for eight years longer, when a writ of possession was issued on the judgment, to restrain the enforcement of which, and to compel a specific performance of the agreement of sale, complainants filed their bill in equity. *Held*, that having accepted and retained the payment made under the agreement made by their agent, and having sought to avail themselves of the benefit of the judgment permitted to be taken in reliance thereon, the defendants could not repudiate such agreement, which must be regarded as having been partially performed, and of which complainants were entitled to the full performance, by such conveyance or decree as would vest them with title to the land on their payment of the purchase money; the delay having been as much through the laches of defendants as of complainants.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

J. A. Martin and John G. Winter, for appellants.
Felix H. Robertson, for appellee.

Before PARDEE and SHELBY, Circuit Judges, and PARLANGE, District Judge.

PARDEE, Circuit Judge. This is a suit in equity instituted in November, 1897, by the appellants, A. W. Cleaver and T. L. Criswell, against Isaac Taylor et al., appellees, to enjoin the execution of a writ of possession issued out of the United States circuit court at Waco, Tex., at the instance of the appellees, upon a judgment at law entered in that court on the 15th day of April, 1889, in cause No. 393, styled, "John D. Taylor et al. v. W. B. McAlister et al." Under the writ mentioned, the appellees sought to oust the appellants from certain lands possessed by them,—200 acres by said Cleaver, and 331 acres by said Criswell,—which land the appellants claim under an agreement of sale with the appellees, which agreement they seek in their bill to enforce. The cause came on to be heard at the May term, 1899, on the bill, answer, and replication, and the evidence adduced thereunder; and there was a decree dismissing the complainants' bill, and dissolving an injunction theretofore granted.

It appears that in 1876 a certain grant or survey of land in Falls county, containing 1,476 acres, and designated upon the map of said county as the "Josiah Taylor ⅓ League," was owned by the heirs of Isaac Taylor, all of whom resided in the state of Tennessee. In that year the said heirs instituted a suit in the chancery court of White county, in that state, for partition among themselves of the lands belonging to the estate of their ancestor, the said Isaac Taylor, among which lands was included the above-noted one-third league. In this chancery proceeding the court appointed two of the heirs, Isaac Taylor and John D. Taylor, special commissioners to sell the lands in Texas, including said one-third league, belonging to said estate. Shortly thereafter, in the same year, the said Isaac and John D. Taylor came to Texas, and, as such commissioners, sold several tracts of land out of said third league. Of the lands so sold, the complainants, T. L. Criswell and A. W. Cleaver (appellants here), purchased, and by mesne conveyances acquired and went into possession of, the

several tracts of land by them respectively claimed in this suit,—Criswell, 331 acres; Cleaver, 200 acres. So stood the title, claim, and possession of the appellants when the Taylor heirs instituted their aforementioned ejectment suit against them in 1889 (No. 393), in which they recovered judgment April 15, 1889. It further appears that, after the aforementioned conveyances by John D. and Isaac Taylor, nothing was done concerning the lands involved in this suit until eight years afterwards, when the said Taylor heirs filed a suit in the district court of Titus county, Tex., for partition among themselves of the lands in Texas belonging to the estate of the said Isaac Taylor. This suit was numbered 2,060 on the docket of the Titus county court. This suit No. 2,060 seems to have been between the same parties and for the same object as the hereinbefore mentioned chancery proceedings in Tennessee in 1876; i. e. partition among the heirs. Among the lands so described to be partitioned is the Joseph Taylor one-third league (1,476 acres), located in Falls county, Tex., parts of which had been conveyed in 1876 by the commissioners of the Tennessee chancery court, John D. and Isaac Taylor, as hereinbefore set forth. November 8, 1884, the Titus county court entered a decree in No. 2,060 determining the respective interests of the heirs in the lands in Texas, and appointing commissioners to partition the same. April 16, 1887, the said court entered a further order in No. 2,060 reciting that an agreement, signed by all the parties, had been filed in the cause, asking a modification of the previous decree; and it was thereupon ordered, "in accordance with said written agreement," that the lands then unsold be sold at private sale, subject to the approval of the court; and appointed F. H. Robertson, of Waco, McLennan county, Tex., "agent to sell all of said lands situated in the counties of Falls and Limestone." The land involved in this suit is a part of lands which said Robertson was so constituted agent to sell. April 28, 1888, the court made a further order in said cause No. 2,060, under which order the agents appointed by previous orders of the court were authorized to make sales "without the approval or confirmation of the court being required to give validity to such sales; and trustees or agents are hereby empowered to make such sales final, and to make good and valid conveyances without the intervention of the court." The said F. H. Robertson, as agent for the Taylor heirs, under the agreement mentioned in and decreed in the above-noted orders of court, and under direct employment by said heirs to so represent them, undertook the business of the supervision and sale of the land embraced in the aforementioned Josiah Taylor grant claimed by the heirs, including the land here in controversy. He found appellants in possession of, and holding title to, the several tracts of land conveyed to them as hereinbefore set forth. Thereupon, in 1889, in the name of the Taylor heirs, and as their attorney, he instituted the suit No. 393 hereinbefore mentioned.

The appellants, Cleaver and Criswell, unquestionably had strong equities to urge in their defense, and they employed lawyers to protect their interests. The evidence shows that on the 8th of April, 1889, the following memorandum in writing was made, to wit:

"Waco, April 8th, 1889.

| | | |
|---|---|---|
| E. H. Criswell-Brock note | $ 869 | 40 |
| Criswell land | 797 | 87 |
| Excess of 8½ acres | 85 | 00 |
| | $1,752 | 27 |
| Deduct $47.50 | 47 | 50 |
| | $1,704 | 77 |

| | | | |
|---|---|---|---|
| 240 | A. W. Cleaver | | |
| | Hammond land | $ 945 | 00 |
| Excess | | 55 | 00 |
| | | $1,000 | 00 |

| | | |
|---|---|---|
| McAlister | $1,025 | 79 |

"Gen'l Robertson agrees to make title to Cleaver for the Hammond land, 200 acres, for $1,000.00, cash, and agrees to make T. L. Criswell a title to the W. H. Brock and E. H. Criswell tracts, containing 331 acres, for $1,704, cash. It is understood that this proposition shall stand open for a month from next Friday, 12th April, '89. The matter as to whether he will take judgment by default left open till Friday, 12, '89. To make such title as is given by decree of U. S. court in No. 393, J. D. Taylor et als. vs. W. B. McAlister et als.

"Robertson & Davis, Attorneys for Plaintiffs."

Indorsed on the back are the names of A. W. Cleaver and Felix H. Robertson.

Following this, on April 12th, the plaintiffs filed their first original petition, and on the same day the defendants filed their first original answer, and on April 15th the plaintiffs filed their first supplemental petition, by which pleadings the legal title of the parties was placed in controversy; the defendants relying solely upon the title as conveyed by the commissioners of the Tennessee court. An agreed statement of facts, limited to the strict legal titles of the parties, was entered into, a jury was waived, the case submitted, and there was a judgment for the plaintiffs. It is not disputed that this judgment was obtained through and by reason of the agreement to sell as set forth in the written memorandum, but both sides claim verbal agreements and understandings in addition. The bill herein charges:

"That, pending the hearing of said suit at law for the recovery of said lands as aforesaid, it was discussed and agreed between orators and said defendants, acting through their respective attorneys aforesaid, and particularly through and between the said Patrick and the said Robertson, that if orators would not assert and prosecute their defenses to said suit at law, and permit and consent to a judgment against them for the recovery of said land involved in said suit, that said plaintiffs, through their said attorneys, or through and by the said Robertson, would sell to orators a portion of said land, to wit, 531 acres thereof, then occupied by orators, and designated by metes and bounds as hereinafter set forth, at the price of five dollars per acre, to be paid when the said plaintiff made good title thereto to your orators. * * * Orators aver and say that, while said judgment recites appearance of parties defendant, in truth and in fact said judgment was agreed upon between said Patrick and Rice and said Robertson and Davis, and was in truth and in fact in all respects a consent judgment, based upon the contract, agreement, and considerations hereinbefore set forth."

It is alleged by the defendants in answer:

"The said Robertson then agreed to sell to said Cleaver 200 acres of said land and to said T. L. Criswell about 331 acres of said land, for the sum of

five dollars per acre, cash; the money to be paid as soon as the complainants could secure a loan from some mortgage company to pay for the same. The said Robertson agreed to aid said complainants by turning over to the attorney of complainants such original papers as might facilitate the negotiations to be carried on between said complainants and such mortgage or loan companies as the complainants might see proper to negotiate with. Said Robertson further agreed to make deeds for such tracts of land to such persons as the complainants might direct, but never agreed to perfect any titles."

**B. H. Rice**, attorney for Cleaver and Criswell in suit No. 393, testifies herein:

"It was further understood and agreed then and there between Messrs. Robertson & Davis, in behalf of their clients, and Patrick and myself, representing Cleaver and Criswell, that Messrs. Criswell and Cleaver should retain their respective tracts of land, making a good and sufficient title thereto, for the sum of $5 per acre, and that Criswell and Cleaver would purchase same from plaintiffs in said cause for said sum of $5 per acre. It was understood at the time that neither Cleaver nor Criswell, although this transaction was upon a cash basis, had any money with which to pay for their respective tracts of land. And it was upon the faith and basis of this agreement that our answers were not prepared and filed, setting up our defenses of title, etc., under purchase from the Taylor heirs, and contest made thereon; relying upon this agreement of Messrs. Robertson & Davis, acting for their clients, the plaintiffs in cause No. 393."

**W. A. Patrick**, another attorney for the same parties, testifies:

"On the day before appearance day we went up to Waco, with the view of filing answer from Cleaver and Criswell; and, after reaching Waco, we (Judge Rice and I) went to the office of Robertson & Davis, who were representing the plaintiffs; and, after talking with Robertson & Davis for awhile, there was a proposition made of settlement. From which side it came, I do not now remember. At any rate, it was agreed between Judge Rice and myself, for Cleaver and Criswell, and Messrs. Robertson & Davis, for the plaintiff, that we would make no fight, or file any answer, but allow them to take judgment for the land, with the understanding that Cleaver and Criswell were to have their respective tracts of land at the price of $5 per acre. At the same time it was understood and agreed that I would go to work and negotiate a loan on the lands for Cleaver and Criswell, in order that Robertson & Davis' people might receive cash for the land from Cleaver and Criswell. My recollection is that it was also understood and agreed that evening that I would take the deed in my name in trust for Cleaver and Criswell, and that I would then sell to them, taking their notes for the purchase money, and that I would then negotiate the notes, and realize the money to pay the plaintiffs for the land."

**F. H. Robertson** himself testifies:

"In said verbal agreement it was agreed between myself and Patrick and Rice, acting for Cleaver and Criswell, that I would make deeds to such persons as they would indicate, conveying to such persons as they should select the land claimed by Cleaver and Criswell, respectively, for which I was to be paid at the delivery of the deeds one thousand dollars by Cleaver, and sixteen hundred and sixty-five dollars by Criswell. Those deeds were to be made by me as commissioner of the district court of Titus county, and in execution of the power conferred upon me by said court in said cause No. 2,060. Messrs. Rice and Patrick at that time represented that their clients had no money with which to pay said amounts, but promised that it should be paid within 30 days from the date of making that agreement, which was on the 12th day of April, 1889."

**John W. Davis**, law partner of Robertson, testifies

"As I have before said, this was a matter in the hands of Gen. Robertson before our partnership, and I took no active part in anything pertaining to it; but I heard conversations between Gen. Robertson and B. H. Rice and W. A. Patrick, representing some of the defendants in said suit, and remember dis-

tinctly that Gen. Robertson stated to them that, if he recovered judgment for said land in said suit in the United States court, he would sell it to the parties in possession at some stipulated price, which I do not now remember, provided they would take such title as he could give them under authority of his appointment as commissioner by the district court of Titus county, Texas, and that the other parties agreed to take such title, and pay the price agreed on. Gen. Robertson agreed to make such deed as he was authorized to make as commissioner appointed by the district court of Titus county, to such parties as they should indicate."

On the 20th of May following the judgment in No. 393, Cleaver and Criswell paid Robertson & Davis, attorneys for the Taylor heirs, $300 on the contract of purchase, as shown by the following:

"$300.00. Received of W. A. Patrick three hundred dollars on account of the purchase money of the A. W. Cleaver and T. L. Criswell tracts of land out of Josiah Taylor one-third league, in Falls county, Texas; the Cleaver tract consisting of 200 acres, and the Criswell tract about 331 acres.

"[Signed]            Robertson & Davis,
"May 20, 1889.          Attys. for the Taylor Heirs."

On the 20th of April, 1889, Robertson, as commissioner appointed by the district court of Titus county, with authority to sell, signed deeds conveying to W. A. Patrick, one of the attorneys of Cleaver and Criswell, the lands in controversy, and acknowledged the same before a notary on the 15th of May, 1889. Thereupon negotiations were entered into with loan companies to borrow money, but the title was rejected by the loan companies. Negotiations were then had between Robertson, attorney for the Taylor heirs, and Patrick, attorney for Cleaver and Criswell, looking to the procuration of a power of attorney from all the Taylor heirs, and in relation to the expense attending the same. These negotiations continued for nearly 12 months, and thereafter proceedings were had, as Robertson testifies:

"After that certified copy had been recorded in the deed records of the county clerk's office of Falls county, Texas, I turned over to W. A. Patrick that certified copy of the judgment, together with all the certified copies of the orders made by the district court of Titus county, Texas, so far as said orders related to my authority to make sales of the land in controversy. In order that Patrick could make his arrangements at less expense with the loan company, a writ of possession was issued in 1889; but, in the hope of completing the sale to Cleaver and Criswell, I did not have those defendants dispossessed. April 16, 1890, another writ of possession was issued and placed in the hands of the United States marshal, but not executed. December 5, 1893, another writ of possession was issued, but not executed. May 29, 1894, an execution was issued for costs, and collected from Cleaver and Criswell. October 22, 1897, an alias writ of possession was issued, returned not executed; it having been ascertained upon going upon the ground described in this writ that the W. B. McAlister named as one of the defendants had died since the rendition of the judgment. After that another writ of possession was issued, the execution of which was enjoined in this court; being No. 138, equity."

From the beginning until now the appellants, Cleaver and Criswell, have been in peaceable, if not quiet, possession, as owners of the land in controversy; occupying, improving, clearing, and cultivating the same. In the view we take of the case, we do not find it necessary to harmonize the conflicting evidence found in the transcript, nor determine the precise details as to the understanding between the parties in regard to the matters in hand. It is sufficient to find, as we do, considering the written memorandum, and the evidence of the attorneys who carried on the negotiations, as well as the other undisputed evidence in the case, that there was a valid contract of

sale by the Taylor heirs, and purchase by Cleaver and Criswell, of the lands in controversy; that as the Taylor heirs not only received the benefit of the part payment of $300 made on behalf of Cleaver and Criswell, but are now seeking to enforce the judgment obtained in their favor in No. 393, they cannot be heard to say that their agents in obtaining the judgment had no authority to make the agreement to sell; and that, as a payment was made on this contract, and as the vendees were in possession of the land, making improvements on the same, we must hold that the contract of sale has been partly performed. The vendees are now before the court, asking a decree for specific performance. They show that all the vendors are in court, and they offer full payment for a good title. Is there any good reason why specific performance should not be ordered according to the time-honored usages of courts of equity? The vendors say that the improvements made have been more than paid for by the revenues of the property. This may be true, but it furnishes no good reason why the contract should not be carried out. The occupancy and use of the property were undoubtedly contemplated by the parties to the contract. The vendors further claim that the payment of the $300 was not made in good faith, but was a trick resorted to, under advice of counsel, to enable the vendees to hold onto the land indefinitely without paying full price. The money was paid and received, and has not been returned or tendered. The vendees had a right to pay, and the vendors had a right to receive. That the payment was intended to ratify the contract and bind the parties is probable, but it was a legitimate transaction. The vendors further contend that the vendees have not in good faith endeavored to carry out the contract, but have for many years refused and neglected to settle up the matter, in the meantime holding on to the land as a matter of speculation, and are therefore guilty of laches. Our conclusion as to this is that the delays have been as much the fault of the vendors as of the vendees. At any time after May 20, 1889, the vendors could have tendered a good title to the property, and demanded full payment, and thus put the vendees in direct default. The enforcement of payment or the surrender of the land would have easily followed such a default. The writs of possession issued from time to time were not served for good reasons pertaining to the appellees, and it appears that, aside from the difficulty of getting a good title direct from the heirs of Taylor, the heirs themselves were in litigation for a number of years; and as to this we again quote from Robertson's testimony:

"It appearing that some of the parties to said agreement were married women, and that they could not lawfully sign such an agreement without an acknowledgment by them in the manner required by the laws of Texas for the execution of deeds for lands by married women, I continued to mention that business to Mr. Patrick from time to time; and he told me finally that the parties could not borrow the money necessary to make their payments, as I remember. Patrick did not finally give up hope of borrowing the money, according to his statements to me, until some time in the summer of 1890. During all that time I took no steps to dispossess any one, as Patrick continually led me to believe that some arrangement might be effected by which his client would be enabled to raise the money he had promised to pay me, and about that time I was informed that the Taylor heirs were again in litigation in the state of Tennessee concerning a partition of their property. I therefore took no further steps in the matter until about the year 1895."

The relative situation of the parties has not been changed during the delay, and time was not of essence to the contract. A case very similar to the instant one is Taylor v. Longworth, 14 Pet. 172, 10 L. Ed. 405. In that case specific performance was decreed after a delay of 13 years, and in the opinion of the court will be found a full elucidation of the rules and principles which are applicable to the matters involved here. See, also, Gunton v. Carroll, 101 U. S. 426, 25 L. Ed. 985; Cheney v. Libby, 134 U. S. 68, 10 Sup. Ct. 498, 38 L. Ed. 818. In our opinion, it would now be inequitable to enforce a surrender of the land from the appellants, and deprive them of the moneys paid originally and under the present contract, and of the improvements made, without first tendering a good title, and giving a short time in which to pay the full price. We understand that a decree in this case, as all the parties are before the court, will give a good title; and, of course, the decree can be so framed that the vendors shall have full payment, principal and interest, and the rights of all parties be fully protected.

The motion of appellees to dismiss this appeal because the assignments of error do not comply with rule 11 of this court (31 C. C. A. cxlvi., 90 Fed. cxlvi.) must be denied. The assignments are sufficiently specific to inform opposite counsel and the court of the real grounds of complaint against the decree appealed from. The decree of the circuit court is reversed, and the cause is remanded, with instructions to enter a decree in accordance with the views herein expressed, and otherwise proceed as equity may require.